**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

_____

RICHARD SHAW, #437250,

        Petitioner,

v.                               Case No. 2:06-CV-14506

THOMAS K. BELL,

        Respondent.

_____/

**OPINION AND ORDER DENYING PETITION**
**FOR WRIT OF HABEAS CORPUS AND DECLINING**
**TO ISSUE A CERTIFICATE OF APPEALABILITY**

Petitioner, Richard Shaw, is a state inmate currently incarcerated at Newberry Correctional Facility in Newberry, Michigan.  Petitioner was convicted following a jury trial in Montmorency County Circuit Court of six counts of first-degree criminal sexual conduct, Mich. Comp. Laws §750.520b, as charged; one count of second-degree criminal sexual conduct, Mich. Comp. Laws §750.520c, as charged; and one count of third-degree criminal sexual conduct, Mich. Comp. Laws §750.520d, as charged.  He was sentenced to concurrent terms of eighteen to thirty-five years' imprisonment for the first-degree criminal sexual conduct conviction and nine to fifteen years' imprisonment for the second- and third-degree criminal sexual conduct convictions.

Petitioner has filed a petition for writ of habeas corpus through counsel pursuant 28 U.S.C. §2254.  For the reasons that follow, the court will deny the petition and will also decline to issue a certificate of appealability.

**I. BACKGROUND**

The state appellate court in this case set forth the underlying facts, which are

presumed correct on habeas review, *see Monroe v. Smith,* 197 F. Supp. 2d 753, 758

(E.D. Mich. 2001), *aff'd*, 41 F. App'x. 730 (6th Cir. 2002), as follows in pertinent part:

> Defendant is the victim's stepfather.  At trial, the victim testified that
> defendant forcibly performed various sexual acts on her beginning from
> the time she was eleven years old continuing until after she had grown
> and moved into her own apartment.  While somewhat vague about exact
> dates, the victim provided vivid descriptions of eight particular incidents
>  . . . defendant pulled his penis out of her vagina during intercourse and
> ejaculated on her abdomen.  On another occasion, defendant forced her
> to have intercourse in his truck while on a snowy back road near his
> hunting cabin . . .
>
>                                     \*   \*   \*
>
> [On] [a]nother occasion . . . defendant forced her to perform fellatio on him
> and she gagged when he ejaculated into her mouth.  A relatively recent
> incident involved the victim awakening in her apartment to find defendant
> beside her bed.  Defendant had let himself in using a spare key the victim
> had given his wife.  He pinned the victim, ripped off her underwear, and
> forcibly penetrated her vagina with his penis.  The most recent event
> occurred when he forced her to have intercourse (in his words, "for old-
> times' sake") during a visit when she expected him to be absent.  She was
> twenty-two years old.  Her testimony reflected that the eight incidents she
> related at trial were merely the incidents, out of hundreds, that she
> remembered most clearly.[1]
>
>                                     \*   \*   \*
>
> Defendant initially pleaded no contest to two of the charges, but later
> withdrew the plea.  At trial, defendant denied any wrongdoing and denied
> admitting any sexual contact to police, but nevertheless testified about an

---

[1]Although the complainant described eight incidents at trial, the facts set forth by
the state appellate court only detail five such incidents.

incident very similar to the one the officer described.[2]  Defendant testified
that he had taken his medication and was lying on his bed "half out of it"
when the victim entered the room naked and attempted to have sex with
him.

* * *

In response, the prosecution presented the victim's diary in which she
described, from an early age, her fear of defendant, her vain efforts to
ward off his advances, a concern for her younger sisters, reservations
about telling the authorities, and her desire to live on her own, free from
defendant's molestation.

*People v. Shaw,* No. 252489, 2005 WL 265160, *1-2, (Mich. Ct. App. Feb. 3, 2005).

Following Petitioner's conviction, he filed a direct appeal with the Michigan Court

of Appeals raising the following claims:

I.  The trial court erred by failing to instruct the jury on the elements of the
offense in open court and in the presence of the Defendant, thereby
denying Defendant-Appellant his due process right to have a properly
instructed jury.  Reversal is required even though defense counsel
consented to submitting the instruction to the jurors in written form only.

II.  Defendant-Appellant did not receive the effective assistance of counsel
at trial in light of the fact that counsel consented to the trial judge's
decision to submit the instructions to the jurors in the written form in lieu of
reading them in open court in the presence of counsel and the Defendant.

III.  Defendant-Appellant's sentence of 18-35 years for first degree criminal
sexual conduct (in lower court case no: 02-200), and 9-15 years for third
degree criminal sexual conduct (lower court case no: 02-194), which were
offenses committed after January 1, 1999, represent a departure from the
legislative guidelines without substantial and compelling reasons
articulated by the sentencing judge.

---

[2]"Defendant also told the police officer about an occasion a few years earlier
when the victim emerged from the shower, approached him on his bed, and
spontaneously began rubbing his exposed penis."  *People v. Shaw,* No. 252489, 2005
WL 265160, *1 (Mich. Ct. App. Feb. 3, 2005).

3

> IV.  Defendant-Appellant's sentences for first- and second-degree criminal sexual conduct committed prior to January 1, 1999 (lower court case nos. 02-195, 02-196, 02-197, 02-198, 02-199, 02-201) are disproportionate to the offense and offender and constitute an[ ] abuse of discretion on the part of the sentencing  judge.

The Michigan Court of Appeals affirmed Petitioner's conviction.  *Shaw,* 2005 WL 265160, at *1-2.

Petitioner then sought leave to appeal from the Michigan Supreme Court.  In his application, Petitioner raised the same four issues he presented to the Michigan Court of Appeals.  Relief was denied "because we are not persuaded that the questions presented should be reviewed by this Court."  *People v. Shaw,* 702 N.W.2d 584 (Mich. 2005).

Petitioner then filed a petition for writ of habeas corpus raising the following claims:

> I.  The trial court erred by failing to instruct the jury on the elements of the offense in open court and in the presence of the Petitioner, thereby denying Petitioner's due process right to have a properly instructed jury. Reversal is required even though defense counsel consented to submitting the instruction to the jurors in written form only.

> II.  Petitioner did not receive the effective assistance of counsel at trial in light of the fact that counsel consented to the trial judge's decision to submit the instructions to the jurors in the written form in lieu of reading them in open court in the presence of counsel and the Petitioner.

## II.  STANDARD

The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996), which govern this case, "circumscribe[d]" the standard of review federal courts must apply when considering

4

applications for a writ of habeas corpus raising constitutional claims, including claims of

ineffective assistance of counsel. *See Wiggins v. Smith,* 539 U.S. 510, 520 (2003).

As amended, 28 U.S.C. §2254(d) imposes the following standard of review for

habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody
> pursuant to the judgment of a State court shall not be granted with respect
> to any claim that was adjudicated on the merits in State court proceedings
> unless the adjudication of the claim -
>
> (1) resulted in a decision that was contrary to, or involved an
> unreasonable application of, clearly established Federal law, as
> determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable
> determination of the facts in light of the evidence presented in the State
> Court proceeding.

28 U.S.C. §2254(d).  Therefore, federal courts are bound by a state court's adjudication

of a petitioner's claims unless the state court's decision was contrary to or involved an

unreasonable application of clearly established federal law. *Franklin v. Francis,* 144

F.3d 429, 433 (6th Cir. 1998).  Mere error by the state court will not justify issuance of

the writ; the state court's application of federal law "must have been objectively

unreasonable." *Wiggins,* 539 U.S. at 520-21 (quoting *Williams v. Taylor,* 529 U.S. 362,

409 (2000) (internal quotes omitted)).  Additionally, this Court must presume the

correctness of state court factual determinations.  28 U.S.C. §2254(e)(1) ("In a

proceeding instituted by an application for a writ of habeas corpus by a person in

custody pursuant to the judgment of a State court, a determination of a factual issue

made by a State court shall be presumed to be correct."); *see also West v. Seabold,* 73

5

F.3d 81, 84 (6th Cir. 1996) ("The court gives complete deference to state court findings

of historical fact unless they are clearly erroneous.").

> The Supreme Court explained the proper application of the "contrary to" clause:
> A state-court decision will certainly be contrary to [the Supreme Court's]
> clearly established precedent if the state court applies a rule that
> contradicts the governing law set forth in our cases. . . .
>
> A state-court decision will also be contrary to this Court's clearly
> established precedent if the state court confronts a set of facts that are
> materially indistinguishable from a decision of this court and nevertheless
> arrives at a result different from [the Court's] precedent.

*Williams,* 529 U.S. at 405-06.

The Supreme Court held that a federal court should analyze a claim for habeas

corpus relief under the "unreasonable application" clause of §2254(d)(1) "when a state-

court decision unreasonably applies the law of this Court to the facts of a prisoner's

case." *Id.* at 409.

> [A] federal habeas court making the "unreasonable application" inquiry
> should ask whether the state court's application of clearly established
> federal law was objectively unreasonable. . . .
>
> [A]n *unreasonable* application of federal law is different from an *incorrect*
> application of federal law. . . . Under §2254(d)(1)'s "unreasonable
> application" clause, then, a federal habeas court may not issue the writ
> simply because that court concludes in its independent judgment that the
> relevant state-court decision applied clearly established federal law
> erroneously or incorrectly.  Rather, that application must also be
> unreasonable.

*Id.* at 409, 410-11.  *See also Davis v. Coyle,* 475 F.3d 761, 766 (6th Cir. 2007); *King v.*

*Bobby,* 433 F.3d 483, 489 (6th Cir. 2006); *Harbison v. Bell,* 408 F.3d 823, 828-29 (6th

Cir. 2005); *Rockwell v. Yukins,* 341 F.3d 507, 512 (6th Cir. 2003) (en banc).

## III.  DISCUSSION

### A.  Submission of Written Jury Instructions in Lieu
### of Orally Reading the Instructions into the Record

After the trial judge and counsel for the parties reviewed the jury instructions out of the presence of the jury, the trial judge informed counsel of the jury instructions he intended to give the jurors.  (Trial Tr., vol. II, 207, Sept. 24, 2003.)  He also informed the parties that he did not intend to read the elements of each of the charged offenses to the jury, but rather intended to send a list of the offenses and their corresponding elements with the jurors to review while deliberating.  (*Id.* at 208.)  The trial judge stated that if there were any objections to his method of dispensing *that portion* of the instructions to the jury that he would read the offenses and elements to the jury into the record, but that he planned to submit a list to the jury in any event.  (*Id.*  at 209.)  Both the prosecutor and defense counsel indicated that they had no objection to the trial court's method of instructing the jury; nor were there any concerns about the accuracy of the printed material.  (*Id.*)  Following the prosecutor's closing rebuttal argument, the trial judge orally stated to the jury instructions regarding their duty as jurors to apply the law given to them by the judge.  (*Id.* at 232-244.)

> It is my duty to instruct you on the law.  If an attorney said something different about the law, follow what I say.  At various times I've already given you some instructions about the law.  You should take all the instructions together as the law you are to follow.  You should not pay attention to some, ignore others.
>
> So, to sum up, it's your job to decide what the facts of the case are and to apply the law as I give it to you, and in that way decide the case. . . .

(*Id.* at  232-33.)

7

The court also orally explained the significance of the elemental structure of

criminal case proof:

> A person accused of a crime is presumed to be innocent. That means you
> must start with the presumption the Defendant is innocent. . . .
>
> Every crime is made up of parts called elements. The Prosecutor must
> prove each element of the crime beyond a reasonable doubt. The
> Defendant is not required to prove his innocence or do anything. If you
> find that Prosecutor has not proven every element beyond a reasonable
> doubt, then you must find the Defendant not guilty.

(*Id.*)

The trial court instructed the jury in a general manner regarding the elements of

the charged offenses and the lesser included offenses, informing the jury that the

specific elements of each charged offense would be provided to them in written form

rather than read orally by the judge:

> In addition to passing in the jury verdict form, we will – we'll pass that in
> almost immediately after you're there. I have to mark them in the gold
> first. We are also going to pass in to you a list of the elements of each
> possible offense.
>
> There are three charged offenses, I believe, in all these different cases:
> Criminal sexual conduct in the first degree, criminal sexual conduct in the
> second degree, and criminal sexual conduct in the third degree; criminal
> sexual conduct in the fourth degree is going to be one of the listed lesser
> included offenses on one or more – more than one of the jury verdict
> forms. But you'll see it. It will be there for you to read.
>
> When you do that the first question you have to ask yourself is did the
> Prosecuting Attorney prove each of the elements beyond a reasonable
> doubt. And the only way you'll know that is if you know what the elements
> are. I usually read that to jurors in a less complicated case, but in one this
> complicated I don't think that you can write as fast as I can talk. I'm going
> to pass it in to you, because we can do so, a list of the elements of CSC
> first degree, CSC second degree, third degree, and fourth degree.
>
> So we are passing in to you a list of the elements of all four in case you
> need them. I'm going to pass in several of those because there are
> several of you attempting to reach a  verdict in the case.

8

(*Id.* at 243-244.)  The instructions specifying the elements of the three criminal sexual conduct ("CSC") offenses with which Petitioner was charged, and the additional offense the jury was entitled to consider as a lesser included, were not read orally but were provided to the jurors in typed form on individual sheets of paper.  Consistent with Michigan law, each offense was explained in terms of the multiple parts and subparts, including both conjunctive and disjunctive elements, for the jury to determine.  More specifically, the definition of first-degree CSC contained ten major sections comprised of element 1), which can be proved in two alternative ways, element 2), which can consist of any one or more of five alternative aggravating circumstances, the statutory definition for one of which, personal injury, required a separate explanation accompanied by a sub-definition of eight factors for jurors to consider should they choose to find that "mental aguish" was a means of inflicting "personal injury" in this case and, finally, element 3), which required a separate paragraph with a set of definitions of its own.  The definitions of second-degree, third-degree, and fourth-degree CSC were less complicated, but set forth in a similar conjunctive-and-disjunctive format as indicated by the structure of the statutes defining the offenses and several terms used within them.  Each of the six charged offenses of first degree CSC carried with it a potential finding of guilt on the lesser offense of third degree CSC; the one charged offense of second degree CSC carried with it the potential of a lesser offense of fourth degree CSC.

Petitioner asserts that the trial judge's manner of instructing the jury was erroneous and violated his due process rights.  The Michigan Court of Appeals disagreed and stated as follows:

9

Defendant first challenges the trial court's decision to provide the jury with a list of the elements of CSC I, II, and III rather than read them to the jury on the record. Defendant specifically waived this issue below when the trial court told counsel, "Here's a list of the elements. I wouldn't be giving it, since I don't want to - if no one - if you're both going to approve this, I'll do it. If somebody objects, I will read it to them; but I am going to give them a list anyway, so is there any objection to me not reading them?" To this inquiry, defense counsel responded, "No objection." Therefore, when viewed in context, defense counsel affirmatively accepted the trial court's decision to refrain from reading the elements, and we will not review this issue. *People v. Carter,* 462 Mich. 206, 215-216; 612 NW2d 144 (2000).

*Shaw,* 2005 WL 265160, at *2.

## 1. Procedural Default

Federal habeas relief may be precluded on claims that a petitioner has not presented to the state courts in accordance with the state's procedural rules. *See Wainwright v. Sykes*, 433 U.S. 72, 85-87 (1977). The doctrine of procedural default is applicable when a petitioner fails to comply with a state procedural rule, the rule is actually relied upon by the state courts, and the procedural rule is "adequate and independent." *White v. Mitchell*, 431 F.3d 517, 524 (6th Cir.), *cert. denied*, 549 U.S.1047 (2006); *see also Howard v. Bouchard*, 405 F.3d 459, 477 (6th Cir. 2005); *Coleman v. Mitchell,* 244 F.3d 533, 539 (6th Cir. 2001). "A procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case 'clearly and expressly' states that its judgment rests on a state procedural bar." *Harris v. Reed*, 489 U.S. 255, 263-64 (1989). The last *explained* state court judgment should be used to make this determination. *Ylst v. Nunnemaker*, 501 U.S. 797, 803-05 (1991) (emphasis in the

original).  If the last state judgment is a silent or unexplained denial, it is presumed that the last reviewing court relied upon the last reasoned opinion.  *Id.*

Here, the Michigan Court of Appeals rendered the last reasoned opinion.  In denying relief on this claim, the court relied upon Petitioner's failure to object to the trial court's submission of a written list of the jury instructions regarding the elements of the criminal offenses in lieu of instructing the jury in open court.  *See Shaw*, 2005 WL 265160, at *2.  The failure to make a contemporaneous objection is a recognized and firmly established adequate and independent state law ground for refusing to review trial errors. See *People v. Carines*, 597 N.W.2d 130, 138 (Mich. 1999); *People v. Stanaway*, 521 N.W.2d 557, 579 (Mich. 1994); *see also Coleman v. Thompson*, 501 U.S. 722, 750-51 (1991). Moreover, a state court does not waive a procedural default by looking beyond the default to determine if there are circumstances warranting review on the merits.  *See Paprocki v. Foltz*, 869 F.2d 281, 285 (6th Cir. 1989).  Plain error review does not constitute a waiver of state procedural default rules.  *See Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001); *Seymour v. Walker*, 224 F.3d 542, 557 (6th Cir. 2000). Nor does a state court fail to sufficiently rely upon a procedural default by ruling on the merits in the alternative.  *See McBee v. Abramajtys*, 929 F.2d 264, 267 (6th Cir. 1991).

The Michigan Court of Appeals denied this claim based upon a procedural default – the failure to properly object at trial.  A state prisoner who fails to comply with a state's procedural rules waives the right to federal habeas review absent a showing of cause for noncompliance and actual prejudice resulting from the alleged constitutional

11

violation or a showing of a fundamental miscarriage of justice. *Coleman*, 501 U.S. at

753; *Gravley v. Mills*, 87 F.3d 779, 784-85 (6th Cir. 1996). A federal habeas court need

not address the issue of prejudice when a petitioner fails to establish cause to excuse a

procedural default. *See Smith v. Murray*, 477 U.S. 527, 533 (1986); *Long v. McKeen*,

722 F.2d 286, 289 (6th Cir. 1983). Therefore, this Court may not review Petitioner's

claims unless he has established (1) cause for the default and actual prejudice as a

result of the alleged violation of federal law or (2) that failure to consider these claims

will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 750.

However, given that the cause and prejudice inquiry merges with an analysis of

the merits of Petitioner's defaulted claim, the court concludes that it would be most

efficient to simply consider the merits of the claim.

## 2. Analysis of the Substantive Jury Instruction Claim

The Supreme Court has provided the following with respect to habeas review of

claims that the trial court's jury instructions resulted in the denial of a petitioner's

constitutional rights:

> The burden of demonstrating that an erroneous instruction was so
> prejudicial that it will support a collateral attack on the constitutional
> validity of a state court's judgment is even greater than the showing
> required to establish plain error on direct appeal. The question in such a
> collateral proceeding is "whether the ailing instruction by itself so infected
> the entire trial that the resulting conviction violates due process," . . . not
> merely "whether the instruction is undesirable, erroneous, or even
> 'universally condemned,'" . . . An omission, or an incomplete instruction, is
> less likely to be prejudicial than a misstatement of the law.

*Henderson v. Kibbee*, 431 U.S. 145, 154-155 (1977) (quoting *Cupp v. Naughten*, 414 U.S. 141, 146-47 (1973)); *see also United States v. Frady*, 456 U.S. 152, 165-66 (1982).

Petitioner claims that the trial court erred when it provided the jury with a set of written instructions, in lieu of oral instruction, setting forth the elements of the substantive criminal offenses at issue in this case.

To the extent that Petitioner challenges this ruling under the Michigan Court Rules pursuant to Mich. Ct. R. 6.414(G),[3] he merely alleges a violation of state law which does not entitle him to federal habeas relief. *See, e.g., Wheeler v. Jones*, 59 F. App'x 23, 28 (6th Cir. 2003). Petitioner does not suggest how the state court's adjudication of this claim "was either contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d). Furthermore, Petitioner does not argue that the verdict form incorrectly stated the elements of the crimes. In any event, a state trial court's decision as to whether to send written instructions into the jury room is not cognizable on habeas review. *See, e.g.*, *United States ex. rel. Hancock v. McEvers,* 619 F. Supp. 882, 886 (N.D. Ill. 1985).

To the extent that Petitioner claims that the trial court's submission of written jury instructions violated his due process rights, the court also disagrees. Petitioner cites several cases from various circuits and state court jurisdictions to support his position

---

[3]Mich. Ct. R. 6.414(G) authorizes the jury to take into the jury room a writing, other than the charging document, which sets forth the elements of the charges.

13

that the trial judge's decision to submit written jury instructions regarding the offenses with which Petitioner was charged and the corresponding elements constitutes reversible error.  Although Petitioner may have found that submitting part of the instructions to the jurors in writing was undesirable, it was not error.

The Sixth Circuit recognizes that the decision to allow the jury to have written instructions is one within the trial court's discretion.  *United States v. Blane,* 375 F.2d 249, 255 (6th Cir. 1967); *see also Warner v. Zent,* 997 F.2d 193 (6th Cir. 1993) (finding that, in a securities fraud prosecution, the trial court did not commit prejudicial error providing written instructions to the jury); *United States v. Henry,* 878 F.2d 937 (6th Cir. 1989) (finding that, in a prosecution for the manufacture and distribution of marijuana and the use of a firearm during the commission of a drug trafficking crime, the trial court did not err in providing the jury with written instructions relating only to substantive counts rather than the full set of instructions after the court had conducted a colloquy with the jury foreman).

In this case, the trial court exercised reasonable discretion, instructing the jury in written form to explain the fairly complex elements of the offenses which, when seen on the page, resemble a flow-chart.  Before doing so, however, the trial judge clearly instructed the jury that:

> You should take all the instructions together as the law you are to follow. You should not pay attention to some, ignore others.  So, to sum up, it's your job to decide what the facts of the case are and to apply the law as I give it to you, and in that way decide the case. . . .

(Trial Tr., vol. II, 232-233.)

14

The judge also orally emphasized to the jury the requirement that each element of each offense must be satisfied, instructing them that:

> Every crime is made up of parts called elements. The Prosecutor must prove each element of the crime beyond a reasonable doubt. . . . If you find the Prosecutor has not proven every element beyond a reasonable doubt, then you must find the Defendant not guilty.
>
> *   *   *
>
> [T]he first question you have to ask yourself is did the Prosecuting Attorney prove each of the elements beyond a reasonable doubt. And the only way you'll know that is if you know what the elements are. . . . I'm going to pass into you, because we can do so, a list of the elements of CSC first degree, CSC second degree, third degree, and fourth degree. So we are passing into you a list of the elements of all four in case you need them.

(*Id.*)

The trial court provided the jury with the elemental definitions of each of the three charged or potential lesser offenses on separate sheets of paper, outlining each part and subpart of the offenses, including the conjunctive and disjunctive elements or subordinate components of the offenses.

Petitioner was entitled to a jury instructed regarding all the elements that must be proven. *United States v. Rybicki,* 403 F.2d 599, 602 (6th Cir. 1968). Under federal law, a trial court judge is not required to orally present all of the jury instructions to jurors; nor is a trial court judge prohibited from providing written instructions to the jury. In this case, the trial judge did orally instruct the jurors that they were required to follow the law as provided by the court, that all of the instructions taken together constituted the law, that the law must be applied to the facts as determined by them, that each crime consists of elements, that each element must be proven beyond a reasonable doubt by

15

the prosecution, and that, in particular, the prosecution must prove each element of the offenses charged beyond a reasonable doubt in order for the jury to find the defendant guilty.  (Trial Tr., vol. II, 232-233, 244.)

Petitioner posits that it is unknown whether the jurors actually read and understood the nature of the offenses and their corresponding elements and that this uncertainty undermined the integrity of Petitioner's trial court proceedings.  However, this argument is speculative, as the record does not indicate that the jurors were confused, misinformed, or unknowledgeable about the written instruction they were given.  Nor is there any reason to believe that the jurors ignored the trial court judge and failed to read the written instructions as they were told to do.  Indeed, jurors are presumed to follow the law as stated by the court and to follow the court's instructions. *Weeks v. Angelone,* 528 U.S. 225, 234 (2000) ("A jury is presumed to follow its instructions.") (citing *Richardson v. Marsh,* 481 U.S. 200, 211 (1987)).  Petitioner has raised no argument that there was a problem with the written instructions.  Petitioner merely asserts that the court erred because it did not orally instruct as to the written instruction on elements.[4]   Petitioner argues that the jury was left utterly without guidance, as was the situation in *Harmon v. Marshall*, 69 F.3d 963, 967 (9th Cir. 1995)

---

[4] In his brief, Petitioner points out the trial judge's comments that "we are passing in to you a list of the elements of all four [offenses] in case you need them" (Trial Tr., vol. II, 244) and emphasizes the latter clause, while arguing that this constitutes a flippant remark that invited the jurors to ignore the written component of the instructions. The court disagrees with this characterization. In the context of the trial judge's instructions regarding the four mentioned CSC offenses, three charged and one not charged, the clause "in case you need them" follows directly after and refers most particularly to the phrase "all four." It appears clear to this court that the trial judge was pointing out to the jury the *possible* need for the jury to refer to the court's definitions of the two lesser included offenses.

("[T]here can be no fundamental fairness in a system that allows a jury to convict a defendant of a crime, for which it has utterly no definition."), but the court disagrees. In *Harmon,* the Petitioner challenged two of his twelve counts of conviction, noting that "no instruction *at all* was given to the jury in his criminal trial on any of the elements of the offense constituting those two counts." (69 F.3d at 965) (emphasis added). This is not that case.

Petitioner makes no other argument challenging the validity of the trial court's instructions. Consequently, the appellate court's decision affirming the jury instruction issue did not result in a decision that was contrary to, or involving an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States. *See* 28 U.S.C. § 2254(d). Therefore, this claim does not entitle Petitioner to habeas relief.[5]

---

[5] The court does not mean to imply that proceeding in this way was a good idea. It was not. While the court has found no constitutional violation justifying the grant of a habeas corpus petition under AEDPA in this instance, chiefly given defense counsel's agreement and the tenor and specificity of the instructions that were orally delivered in open court, leaving the jury with paper alone as to any significant component of instruction constitutes, at best, a risky procedure. The jury is often given a helpful, printed version of the instructions in addition to hearing them in open court, but in another setting with less caution exercised in court and no unusual circumstance justifying it (e.g., the trial judge's speech is impaired or difficult to understand) instructing only in a paper version, even in significant part, could be found to violate a defendant's right to a properly instructed jury. In addition, there is substantial inherent value in the tradition of oral instructions by the judge, even in a modern, visually-dominant culture. Oral instruction can give more equal weight and significance to the entire body of jury instructions, and make more real the injunction that "all instructions are to be considered as a whole." It also permits the judge to emphasize and perhaps make more clear in a case such as this issues such as conjunctive and disjunctive components or definitions associated with a particular crime. Oral instructions in open court also permit the parties involved, victims, and the public to hear, understand, and learn about the law relevant to the case and the operation of our judicial system. Finally, but not unimportantly, the judge instructing in court is presumably facing the jury and paying

17

### B.  Ineffective Assistance of Counsel for Failure to Object to
### the Submission of Written Jury Instructions

Petitioner claims that defense counsel was ineffective due to counsel's failure to object to the trial court's decision to submit a list of the offenses and the corresponding elements to the jury in lieu of orally instructing the jurors.  The Michigan Court of Appeals disagreed, finding:

> Moreover, defendant fails to demonstrate any error in the list of elements, or any reason why an oral presentation would be anything other than redundant.  Therefore, the presentation did not prejudice defendant in any identifiable way, and defendant consequently fails to establish his appellate claim of ineffective assistance of counsel.  *People v. Riley, (After Remand),* 468 Mich. 135, 140; 659 NW2d 611 (2003).

*Shaw,* 2005 WL 265160, at  *2.

To the extent that Petitioner contends that any procedural default should be excused because of trial counsel's ineffectiveness in failing to object to the manner in which the jury was instructed, ineffective assistance of counsel will constitute "cause" to overcome procedural default only if it constitutes an independent constitutional violation under *Strickland v. Washington,* 466 U.S. 668 (1984).  For ineffective assistance of counsel to constitute cause to excuse a procedural default, the ineffective assistance of counsel claim must itself be exhausted in the state courts.  *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000).  Because the court addressed the merits of Petitioner's jury

───────────────────────────

attention, and has at least a chance to gather "feedback" from the expressions of jurors. He can repeat an instruction or restate it for clarity if it appears that there may be confusion or misapprehension at play.

instruction claim, thus foregoing the need for a cause and prejudice analysis, the court

will likewise address the merits of Petitioner's ineffective assistance of counsel claim.

To show that Petitioner was denied the effective assistance of counsel under

federal constitutional standards, he must satisfy a two-prong test.  In *Strickland,* the

United States Supreme Court sets forth the two-pronged test for determining whether a

habeas petitioner has received ineffective assistance of counsel. First, a petitioner must

prove that counsel's performance was deficient.  This requires a showing that counsel

made errors so serious that he or she was not functioning as counsel as guaranteed by

the Sixth Amendment.  *Strickland,* 466 U.S. at 687.  Second, the Petitioner must

establish that the deficient performance prejudiced the defense. Counsel's errors must

have been so serious that they deprived the Petitioner of a fair trial or appeal.  *Id.*

With respect to the performance prong, a petitioner must identify acts that were

"outside the wide range of professionally competent assistance" in order to prove

deficient performance.  *Id.* at 690.  The reviewing court's scrutiny of counsel's

performance is highly deferential.  *Id.* at 689.  The court must recognize that counsel is

strongly presumed to have rendered adequate assistance and made all significant

decisions in the exercise of reasonable professional judgment.  *Id.* at 690.  To satisfy

the prejudice prong under *Strickland,* a petitioner must show that "there is a reasonable

probability that, but for counsel's unprofessional errors, the result  of the proceeding

would have been different."  *Id.* at 694.  A reasonable probability is one that is sufficient

to undermine confidence in the outcome.  *Id.*  "On balance, the benchmark for judging

any claim of ineffectiveness must be whether counsel's conduct  so undermined the

19

proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result." *McQueen v. Scroggy,* 99 F.3d 1302, 1311-12 (6th Cir. 1996).

Petitioner alleges that counsel was ineffective in not objecting to the submission of written jury instructions as to the offenses and elements in lieu of orally providing the instruction. Because the court found no error in the trial court's decision to instruct the jurors, in part, in a writing, it likewise finds that trial counsel was not ineffective for not placing an objection on the record to the manner in which the trial judge chose to instruct the jury. *Strickland,* 466 U.S. at 688; *Greer v. Mitchell,* 264 F.3d 663, 676 (2001). Therefore, habeas relief is not warranted as to this claim.

## IV. CERTIFICATE OF APPEALABILITY

A petitioner must receive a certificate of appealability ("COA") in order to appeal the denial of a habeas petition for relief from either a state or federal conviction. 28 U.S.C. §§ 2253(c)(1)(A), (B). A district court, in its discretion, may decide whether to issue a COA at the time the court rules on a petition for a writ of habeas corpus or may wait until a notice of appeal is filed to make such a determination. *See Castro v. United States*, 310 F.3d 900, 903 (6th Cir. 2002); *Lyons v. Ohio Adult Parole Auth.*, 105 F.3d 1063, 1072 (6th Cir. 1997), *overruled in part on other grounds by Lindh v. Murphy*, 521 U.S. 320 (1997). In denying the habeas petition, the court has studied the case record and the relevant law, and concludes that, as a result, it is presently in the best position to decide whether to issue a COA. *See Castro*, 310 F.3d at 901 (quoting *Lyons*, 105 F.3d at 1072) ("[Because] 'a district judge who has just denied a habeas petition . . . will

have an intimate knowledge of both the record and the relevant law,'" the district judge is, at that point, often best able to determine whether to issue the COA).

A court may issue a COA "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  When a federal district court rejects a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong.  *See Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000).  "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).  In applying this standard, a district court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of the petitioner's claims.  *Id.* at 336-37.  When a federal district court denies a habeas claim on procedural grounds without addressing the merits, a certificate of appealability should issue if it is shown that jurists of reason would find it debatable whether the petitioner states a valid claim of the denial of a constitutional right, and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.  *See Slack*, 529 U.S. at 484-85.  The court concludes that jurists of reason would not find the court's assessment of Petitioner's claims debatable or wrong, and the court will thus decline to issue Petitioner a certificate of appealability.

**V.  CONCLUSION**

Petitioner has not established that he is in the State of Michigan custody in violation of the Constitution or laws of the United States.  Accordingly,

IT IS ORDERED that the "Petition for Writ of Habeas Corpus" [Dkt. #1] is DENIED.

IT IS FURTHER ORDERED that the court DECLINES to issue Petitioner a certificate of appealability.

s/Robert H. Cleland                                          
ROBERT H. CLELAND
UNITED STATES DISTRICT JUDGE

Dated:  May 29, 2009

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, May 29, 2009, by electronic and/or ordinary mail.

s/Lisa G. Wagner                                          
Case Manager and Deputy Clerk
(313) 234-5522